THE STATE, WILLIAM V. V. MABON ET AL., EXECUTORS, &c., OF ABEL I. SMITH, RELATORS, v. DAVID C. HALSTED, DIRECTOR OF THE BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY, ET AL.

1. Where the power of eminent domain is conferred upon a merely public agent, and the compensation to be made is to be ascertained by another body, as commissioners or a jury, the agent has an election, whether to pursue or abandon the condemnation, after the price is fixed, unless a contrary legislative intent is clearly indicated.
2. If such an election has been once made, no right of reconsideration remains.
3. A legislative power to take by condemnation, at a price to be fixed by another body, does not include a power to contract for purchase.
4. The performance of a contract entered into by resolutions of a public body, which, in an important feature, violate a penal statute, will not be compelled by *mandamus.*
5. Nor will it, if the resolutions show, on their face, that the body passed them under a clear mistake as to its legal obligations to do what it was resolving to do.

By an act of the legislature, approved March 18th, 1874, (*Pamph. Laws, p.* 288,) the board of chosen freeholders of Hudson county was authorized to take, by condemnation, a portion of Snake Hill, in that county, for the purposes of an alms-house, etc. According to its provisions, a petition was presented, May 29th, 1875, by the board, to a justice of this court, asking for the appointment of commissioners to examine and appraise the lands of the relators, (which are covered in

the act,) and to assess the damages to be awarded to the owners for the same ; and the commissioners thereupon selected, on November 19th, 1875, made and filed with the clerk of the county their report, awarding $40,440 as the value and damages. At a meeting of the board, held January 6th, 1876, a motion to accept the purchase of these lands as condemned was lost, and, at a subsequent meeting, held March 6th, 1876, (proceedings to compel the board to pay the award having in the meantime been instituted,) a resolution to use all means to defeat those proceedings, and that the board withdraw from the condemnation, and relinquish all pretensions of ever accepting said condemnation and award, was unanimously adopted. On March 15th, 1877, the board passed the following preambles and resolutions, viz. :

" WHEREAS, under and by virtue of the provisions of an act of the legislature, entitled ' An act to authorize the Board of Chosen Freeholders of Hudson county to condemn and take for public use all that portion of Snake Hill not owned by said county, and authorizing the sale of the salt meadows and low land attached to the county farm,' approved March 18th, 1874, Samuel C. Nelson, Robert C. Bacot and Edmund C. Bramhall were appointed commissioners to appraise said lands ; and,

" WHEREAS, said commissioners made such appraisement, and filed their report and award in the office of the clerk of the county of Hudson, pursuant to such statute, on the 19th day of November, 1875, awarding to Messrs. Coyle, White and O'Neill, for their lands, the sum of $26,097.50, and to John Van Vorst and William V. V. Mabon, executors and trustees of the last will and testament of Abel I. Smith, deceased, the sum of $40,440 ; and,

" WHEREAS, no appeal from said award was taken by the last board of freeholders, or any party in interest, within the time required by the provisions of said act, and title to said property having vested in the county ; therefore, be it

"*Resolved,* That the board, in pursuance of said proceedings and the obligations imposed by said act, do carry into effect the said awards, and pay the amounts awarded to the parties entitled thereto, with interest from the time of filing said awards ; and be it

"*Resolved,* That the board do borrow the sum of $72,670, the amount of the awards and interest aforesaid, and pay the same to the parties entitled thereto, for the lands so as aforesaid taken and condemned for the use of the county ; and that, in order to raise said sum of money, bonds be prepared and issued in the sum of $1000 each, payable in twenty years from the date thereof, with interest at the rate of seven per cent. per annum, payable half yearly, which bonds shall be given signed, countersigned, numbered and registered, with coupons thereto attached, and payable in the manner provided for and in accordance with the fifth section of the act of the legislature aforesaid."

On March 29th, 1877, the director-at-large vetoed these resolves, and on April 19th, 1877, they were again passed, notwithstanding his veto, by a vote of eleven to five—the board of 1877 containing only three of the members of the board of 1876, besides the director-at-large.

The relators now seek a *mandamus* requiring the director-at-large to sign and affix the county seal to the bonds authorized in the resolution, and the collector to countersign the same, and commanding that they be sold, and with the proceeds the relators be paid the amount of their award.

Argued at June Term, 1877, before Justices SCUDDER, DIXON and REED.

For the relators, *A. I. Smith* and *I. W. Scudder.*

For the defendants, *J. H. Lippincott.*

The opinion of the court was delivered by

DIXON, J.   The first question arising upon the facts stated is, whether the board of freeholders was bound by the proceedings in condemnation to take the land at the price awarded.

The statute of March 18th, 1874, provides for no confirmation by any tribunal, of the commissioners' report, but enacts that on its filing, and payment or tender of the sum awarded, the board of chosen freeholders shall be empowered to enter upon and take possession of the lands, and the report and proof of payment or tender shall be plenary evidence of the right of the board to have and enjoy the lands.   Either party, feeling aggrieved by the report, was authorized to appeal, within sixty days after its filing, to the Circuit Court of Hudson county, where the assessment of value and damages was subjected to review by a jury, upon whose verdict judgment was to be rendered; but in no case could the freeholders enter upon lands until they had paid or tendered the sum awarded, either by the commissioners or by the jury.

It is insisted that, under this act, the board of chosen freeholders had no option, save either to pay the award or to appeal; that it could not recede from the condemnation, after the report was filed.

In *Matter of the Water Commissioners of Jersey City*, 2 *Vroom* 72, upon a statute directing that the report of the commissioners should be made to and confirmed by the Circuit Court of Hudson county, it was held that the public authorities might withdraw from the condemnation at any time before the confirmation of the award.   The decision was based upon public policy, and discriminated between proceedings initiated for the acquisition of lands by private companies and those where a merely public agent was the mover; and as to the latter, it is said, " empowered to make the purchase for the public good, he ought not to be forced to conclude it to the public detriment."   The principle which underlies the decision is this, that, inasmuch as the price is an important element in determining whether the public good

consists with the taking of the land, the public agent should have an election to take the land or not, after the price is settled. In the case cited, the confirmation of the report is considered as terminating the right of choice; but the fact that the statute now under review establishes no such period, does not prevent the application of the principle. Perhaps, under this act, the limit may be fixed by the expiration of the time for an appeal, or by the judgment, if appeal be made; but, as the legislature has not expressly taken away the option, the right must be conceded, to some reasonable extent. This court is not alone in recognition of this principle; Judge Dillon deduces it as the general rule applied by many tribunals. *Dillon on Mun. Corp.*, § 473.

The next question, therefore, is, whether the board of freeholders exercised its right of choice; and, if it did, how? The refusal of the board, on January 6th, 1876, to accept the purchase of the lands as condemned, was, I think, substantially an election not to pursue the right of condemnation; or, at least, was a declaration that, unless the terms were modified, the purchase would not be completed; and when the power of legal modification was gone, through the expiration of the time to appeal, that declaration became an absolute and final refusal—a conclusive abandonment of the right to take under the proceedings that had been instituted.

I am, therefore, of opinion that these proceedings never ripened into an obligation on the part of the county to pay the sum awarded.

But it is further insisted that the adoption of the preambles and resolutions of March 15th, 1877, gave the relators a right to the amount awarded. Disregarding the questions raised as to whether these resolutions were ever legally passed, I think they do not entitle the relators to the relief sought. If the views already expressed are sound, then the condemnation proceedings, and all the rights and duties of the parties under them, were defunct; and nothing that either party could do would revivify them. No resolutions of the board could afterwards exact their lands from the owners. The power of

eminent domain, if it still subsisted under the statute, must be wielded anew, through the forms which the statute prescribed, and not by mere resolution.  Hence these resolves of March 15th created no duty on the part of the owners, and no right on the part of the county, either of themselves or by force of the legislative act.  Whatever efficacy is to be ascribed to them must spring from their expressing the consent of the board to a purchase of the lands by contract.  Viewed in this aspect, I think that, even if the board had power so to purchase, yet as, on the face of the resolutions, it is apparent that they were passed for the purpose, not of expressing a present consent to a contract, but of carrying out what were erroneously believed to be subsisting legal obligations, this court should not enforce by *mandamus* the performance of a contract so made by a public corporation ; the private party should be left to his remedy by action for damages.  But, in my judgment, the board had not the power to make the contract.  The act of 1874 gives power to " take by condemnation " only.  It confers no power to contract for the purchase ; and the latter power is not included in the former—they are quite dissimilar.  The legislature, in this act, did not indicate its willingness to enable the board to prescribe the terms on which the acquisition of the lands should be made, but required those terms to be fixed by another tribunal, giving to the board simply a discretion to accept or reject.  The power to issue bonds, granted by this act, must likewise be confined to the purpose for which it was conferred—the purpose of paying for lands so taken by condemnation.  Hence this statute does not legalize the purchase or the issue of bonds for such purchase.  If we look beyond this statute, we are confronted by the act of February 7th, 1876, (*Pamph. Laws, p.* 16,) which prohibits the disbursement of public moneys and the incurring of obligations, by boards of chosen freeholders, in excess of the appropriations provided.  From the resolutions before us, it is to be inferred that no appropriation existed adequate to meet the price named, since the amount was to be raised by the issuance of twenty-year bonds,

and the board had no legal authority to make an appropriation to meet a debt maturing at so distant a day.   *State* v. *Halsted, ante p.* 402.

The issue of these bonds would, therefore, have been contrary to the policy of that statute, and the court should not permit, much less command it.   *Siedler* v. *Chosen Freeholders of Hudson, ante p.* 632.

The *mandamus* prayed for should, therefore, be refused.